# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

GERALD W. ATKINSON,

    Plaintiff,

      v.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

    Defendant.

)
)
)
)
)
)
)
)
)
)
)
)

NO. CV 09-2608 AGR

**MEMORANDUM OPINION AND
ORDER**

Gerald Atkinson filed this action on April 17, 2009.  Pursuant to 28 U.S.C. §
636(c), the parties consented to proceed before Magistrate Judge Rosenberg on
June 17 and June 23, 2009.  On November 13, 2009, the parties filed a Joint
Stipulation ("JS") that addressed the disputed issues.  The Court has taken the
matter under submission without oral argument.

Having reviewed the entire file, the Court affirms the decision of the
Commissioner.

///
///
///
///

**I.**

## PROCEDURAL BACKGROUND

On September 14, 2006, Atkinson filed an application for Supplemental Security Income benefits alleging a disability onset date of January 1, 2001. Administrative Record ("AR") 64-69.  The application was denied initially and upon reconsideration.  AR 45-49, 53-56.  An Administrative Law Judge ("ALJ") conducted a hearing on June 16, 2008, at which a medical expert testified but Atkinson failed to appear.  AR 21-29.   On June 23, 2008, the ALJ issued a decision denying benefits.  AR 38-44.  On February 20, 2009, the Appeals Council denied Atkinson's request for review.  AR 1-5.  This action followed.

**II.**

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to deny benefits.  The decision will be disturbed only if it is not supported by substantial evidence, or if it is based upon the application of improper legal standards.  *Moncada v. Chater*, 60 F.3d 521, 523 (9th Cir. 1995); *Drouin v. Sullivan*, 966 F.2d 1255, 1257 (9th Cir. 1992).

"Substantial evidence" means "more than a mere scintilla but less than a preponderance – it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion."  *Moncada*, 60 F.3d at 523.  In determining whether substantial evidence exists to support the Commissioner's decision, the Court examines the administrative record as a whole, considering adverse as well as supporting evidence.  *Drouin*, 966 F.2d at 1257.  When the evidence is susceptible to more than one rational interpretation, the Court must defer to the Commissioner's decision.  *Moncada*, 60 F.3d at 523.

///

///

///

2

1

2

**III.**

**DISCUSSION**

3

**A.    Disability**

4

A person qualifies as disabled, and thereby eligible for such benefits, "only

5

if his physical or mental impairment or impairments are of such severity that he is

6

not only unable to do his previous work but cannot, considering his age,

7

education, and work experience, engage in any other kind of substantial gainful

8

work which exists in the national economy." *Barnhart v. Thomas*, 540 U.S. 20,

9

21-22, 124 S. Ct. 376, 157 L. Ed. 2d 333 (2003).

10

**B.    The ALJ's Findings**

11

Atkinson failed to attend a consultative physical examination ordered by the

12

Agency.  AR 41.  Citing 20 C.F.R. § 416.918, the ALJ denied Atkinson's claim for

13

disability based on his failure to appear at the examination.  The ALJ then made

14

the following additional findings:  "[T]he objective medical evidence fails to

15

establish the existence of a medically determinable impairment."  AR 42.  Even if

16

Atkinson's allegations of "heart problems, diabetes, a right hand problem, and dry

17

skin" "were considered to be medically determinable impairments, they would not

18

be 'severe' as defined by the regulations."  AR 42-44.

19

**C.    Treating Psychologist**

20

The ALJ reviewed the "complete medical history," including the Bureau of

21

Prisons medical records for Atkinson, who was incarcerated until August 18,

22

2006.  AR 39, 42.  The ALJ noted that, in June 2005, the doctor could not assess

23

Atkinson's mental condition because he refused to discuss it.[1]  AR 42, 309.  The

24

ALJ concluded that the objective medical evidence did not establish a medically

25

determinable mental impairment.  AR 42.  Even assuming the existence of a

26

medically determinable impairment, the ALJ found no evidence of any effect on

27

_____

28

[1] Atkinson did not allege a mental impairment.  AR 80.

3

1    Atkinson's functioning or ability to perform work-related activities for 12
2    consecutive months.  AR 43.

3         Atkinson argues that the ALJ erred by failing to discuss or mention an
4    earlier opinion of a prison psychologist, Robert Bodholdt, who evaluated him in
5    August 2003.  JS 9; AR 471-72.

6         An opinion of a treating physician[2] is given more weight than the opinion of
7    non-treating physicians.  *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007).  To
8    reject an uncontradicted opinion of a treating physician, an ALJ must state clear
9    and convincing reasons that are supported by substantial evidence.  *Bayliss v.*
10   *Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005).  When a treating physician's
11   opinion is contradicted by another doctor, "the ALJ may not reject this opinion
12   without providing specific and legitimate reasons supported by substantial
13   evidence in the record.  This can be done by setting out a detailed and thorough
14   summary of the facts and conflicting clinical evidence, stating his interpretation
15   thereof, and making findings."  *Orn,* 495 F.3d at 632 (citations and quotation
16   marks omitted).  "When there is conflicting medical evidence, the Secretary must
17   determine credibility and resolve the conflict."  *Thomas v. Barnhart,* 278 F.3d 947,
18   956-57 (9th Cir. 2002) (citation and quotation marks omitted).

19        A medically determinable impairment "must result from anatomical,
20   physiological, or psychological abnormalities which can be shown by medically
21   acceptable clinical and laboratory diagnostic techniques."  20 C.F.R. § 404.1508;
22   20 C.F.R. § 416.908; 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).   Subjective
23   symptoms alone cannot establish the existence of a medically determinable
24   impairment.  *Ukolov v. Barnhart*, 420 F.3d 1002, 1005 (9th Cir. 2005).

25        Bodholdt's report dated August 19, 2003 does not contain a diagnosis and
26   does not refer to any medically acceptable diagnostic techniques that would

27   
28        [2]  This Court assumes Bodholdt was a treating psychologist for purposes of analysis.

support a finding of a mental impairment.  AR 472 ("[d]iagnosis deferred pending evaluation findings").  While in prison after a bank robbery conviction, Atkinson made at least two attempts at escape.  AR 471.  Atkinson refused to discuss "certain areas," including "the present offense."  Atkinson complained about needing exercise, feeling mildly depressed and feeling claustrophobic about being housed in SHU (special housing unit) which "is unfortunately our least restrictive alternative to managing his habit of approaching and attempting to scale the fence."  AR 472.  Atkinson did not feel safe around other inmates.[3]  AR 471.  Reviewing his file, Bodholdt noted Atkinson had a B.S. degree and teaching certificate, but family members noticed a "decline in functioning" in 1984 after his mother's death.  AR 471.  Atkinson lost his job selling insurance in 1987, and had been incarcerated since 1999.  *Id.*  Atkinson denied any mental health history or psychological problems, and denied any history of auditory or visual hallucinations.  AR 471-72.  Atkinson had no interest in psychological treatment.  Bodholdt concluded that "at the very best we have horrendously poor judgment, with 'rule outs' including psychosis and loss of reality contact, delirium or some organically-based disruption in thinking, as well as the possibility of 'death by cop', or willingly risking being shot while attempting escape."  *Id.*  As the ALJ noted, Atkinson subsequently refused to participate in an evaluation.

Bodholdt's opinion was insufficient to establish the existence of a medically determinable mental impairment.  *Ukolov*, 420 F.3d at 1005-06 (rejecting claim of error in failing to address an insufficient treating physician's opinion; ALJ did not err in finding lack of medically determinable impairment).  The ALJ did not err.

## D.   Development of the Record

The ALJ found that Atkinson "without good reason, refused to meaningfully take part in a consultative examination, which was necessary to establish the

_____

[3]  The prison medical record indicates injuries from altercations.  AR 300, 307, 339, 486.

1   severity of his physical condition" and "severely diminished my ability to

2   determine the nature and severity of claimant's physical condition and any

3   resulting limitations."  AR 41-42.  "Therefore, I have concluded that substantial

4   evidence supports the finding that the claimant refused to cooperate in the

5   consultative examination, and consequently, his claim for disability is properly

6   denied on the basis of a violation of 20 C.F.R. § 416.918."[4]  AR 42.  The ALJ

7   went on to analyze Atkinson's claim based on the remaining evidence.  *Id.*

8        Atkinson argues that the ALJ did not develop the record regarding why he

9   failed to attend his examination.  JS 3.  According to Atkinson, the ALJ "should

10  have, at a minimum, attempted to contact the plaintiff, requested additional

11  medical records, ordered that the Plaintiff undergo a consultative examination,

12  continued the hearing, or kept the record open after the hearing to allow

13  supplementation of the record."  JS 4.

14       The ALJ satisfied his duty to develop the record.  The ALJ found, and

15  Atkinson does not dispute, that Atkinson was notified on several occasions of the

16  scheduled date, time and place of consultative medical examinations but failed to

17  appear.  AR 41, 45, 53, 131, 133-34.  Atkinson offered no reason for failing to

18  attend the examinations, and "[t]he record is otherwise devoid of an explanation

19  as to reasons for the claimant's failure or refusal to attend the consultative

20  examination."  AR 41.  This finding is supported by substantial evidence.  After

21  being informed that his application for benefits was denied and that he had failed

22

23  _____

         [4]  20 C.F.R. § 416.918(a) provides, in part:  "If you are applying for benefits
24  and do not have a good reason for failing or refusing to take part in a consultative
    examination or test which we arrange for you o get information we need to
25  determine your disability or blindness, we may find that you are not disabled or
    blind."  "Examples of good reasons for failure to appear . . . include:  (1) Illness on
26  the date of the scheduled examination or test; (2) Not receiving timely notice of
    the scheduled examination or test, or receiving no notice at all; (3) Being
27  furnished incorrect or incomplete information, or being given incorrect information
    about the physician involved or the time or place of the examination or test, or; (4)
28  Having had death or serious illness occur in your immediate family."  20 C.F.R. §
    416.918(b).

1   to attend a consultative examination on June 6, 2007 (AR 45), Atkinson

2   requested reconsideration but did not provide any reason for failing to attend the

3   consultative examination.  AR 50.  Atkinson was again requested to attend a

4   consultative examination and failed to do so, and his application was again

5   denied.  AR 53.  Atkinson requested a hearing before an ALJ but did not provide

6   any reason why he failed to attend the consultative examination.  AR 57.

7   Atkinson did not attend the hearing before the ALJ, and counsel did not offer an

8   explanation for his failure to attend the consultative examinations.[5]  Atkinson's

9   prison medical record is over 200 pages and contains notes and results of

10  numerous medical examinations.  The record contains several handwritten

11  requests for medical treatment with reasons.  AR 546, 553, 556, 557, 560-62,

12  563-64.  In at least one instance in which he refused medical treatment at the

13  prison, Atkinson wrote an explanation.  AR 555.

14      On this record, the ALJ satisfied his obligation to develop the record.  This

15  case is readily distinguishable from *Higbee v. Sullivan*, 975 F.2d 558, 562 (9th

16  Cir. 1992), in which a claimant who was diagnosed as a paranoid schizophrenic

17  refused to answer questions about where he lived and had his benefits

18  terminated.  *Id.* at 561.  The Ninth Circuit found that the unrepresented claimant's

19  failure to cooperate appeared to be due to the very factor that rendered him

20  eligible for benefits in the first place, and stated that the ALJ should have

21  continued the hearing "so S.S.A. personnel could investigate whether there were

22  any other ways to determine where [claimant] resided," such as through friends or

23  appointment of counsel.  *Id.* at 562.

24

25  _____

26      [5]  The ALJ sent a notice of hearing to Atkinson.  AR 8-14.  The ALJ stated
    he received an acknowledgment form stating Atkinson would be present.  AR 38.
27  Prior to the hearing, counsel stated that "Mr. Atkinson is available to testify, and
    does not waive any of his rights, including his right to be heard."  AR 60.  At the
28  hearing, counsel stated that Atkinson would not attend a hearing because "[h]e
    believes this is a government conspiracy."  AR 24.

1    By contrast, as discussed above, the record does not contain evidence of a

2    medically determinable mental impairment.  There is no indication that Atkinson's

3    failure to cooperate is due to a mental illness.  The extensive prison medical

4    record indicates Atkinson sought and obtained medical examinations by

5    government medical personnel in prison over a period of several years, including

6    after the alleged onset date.  *See Kreidler v. Barnhart*, 385 F. Supp. 2d 1034,

7    1037 (C.D. Cal. 2005) ("[A]lthough plaintiff was initially awarded disability due to a

8    mental impairment, absolutely nothing in the record suggests plaintiff's failure to

9    cooperate was due to her mental impairment.").  Moreover, Atkinson was

10   represented by counsel during the period that he refused to attend a consultative

11   examination.  AR 51-52.

12   ### E.    **Atkinson's Medications**

13   Atkinson contends that the ALJ erred by failing "to consider the type and

14   dosage of [his] prescribed medications."  JS 12-13.  Atkinson indicated that he

15   currently takes glyburide, nitroglycerin and Caduet (AR 84, 89), but there is no

16   evidence or suggestion that his medications cause any side effects that interfere

17   with Atkinson's ability to work.  The ALJ did not err.  *See Osenbrock v. Apfel*, 240

18   F.3d 1157, 1164 (9th Cir. 2001) ("There were passing mentions of the side effects

19   of [plaintiff's] medication in some of the medical records, but there was no

20   evidence of side effects severe enough to interfere with [his] ability to work."); *see*

21   *also Miller v. Heckler*, 770 F.2d 845, 849 (9th Cir. 1985) ("[Plaintiff] produced no

22   clinical evidence showing that narcotics use impaired [his] ability to work").

23   ///

24   ///

25   ///

26   ///

27   ///

28   ///

**IV.**

**<u>ORDER</u>**

IT IS HEREBY ORDERED that the decision of the Commissioner is affirmed.

IT IS FURTHER ORDERED that the Clerk of the Court serve copies of this Order and the Judgment herein on all parties or their counsel.

DATED:  July 1, 2010

ALICIA G. ROSENBERG
United States Magistrate Judge

9